**F I L E D**
United States Court of Appeals
Tenth Circuit

**MAY 1 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HARRY H. McWILLIAMS, II

    Plaintiff-Appellant,

v.

LOGICON, INC., a Delaware corporation;
LOGICON TECHNICAL SERVICES, INC.,
a California corporation,

    Defendants-Appellees.

No. 97-3190

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 95-2500-GTV)**

---

Before **SEYMOUR, BRORBY**, and **BRISCOE**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

Plaintiff Harry H. McWilliams II appeals the district court's order granting

Defendants Logicon, Inc.'s and Logicon Technical Services, Inc.'s motion to stay

his employment discrimination lawsuit pending arbitration. We exercise

jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(D) and 28 U.S.C. § 1291 and affirm.[1]

Mr. McWilliams was employed by Logicon, Inc. and Logicon Technical Services, Inc. (collectively, "Logicon") as a "work area controller" from 1989 through part of 1995. Logicon designs and conducts computer simulated military exercises for the United States military.

When first hired in 1989, Mr. McWilliams executed an acceptance of employment letter supplied by Logicon in which he agreed "any controversies, claims, and/or disputes arising out of the termination of [his] employment with [Logicon], shall be settled exclusively through binding arbitration ... pursuant to the Federal Arbitration Act." In 1990, Mr. McWilliams accepted a transfer by executing a similar acceptance letter containing the same arbitration clause. Logicon terminated Mr. McWilliams on May 9, 1995.

Mr. McWilliams filed suit against Logicon in federal district court on December 13, 1995, alleging that during the course of his employment with

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant parties' requests for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.

Logicon, he suffered from a number of disabling conditions for which he requested accommodation, and that Logicon discriminatorily terminated his employment as a result of his disabling conditions in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq*.

Logicon responded to Mr. McWilliams' complaint on January 3, 1996, with a motion requesting the court dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, stay litigation pending arbitration pursuant to the clauses contained in the above-referenced acceptance letters.[2] The district court entered an order granting a stay pending arbitration on July 9, 1996 and at Mr. McWilliams' request, appointed a former state court judge as arbitrator. On May 23, 1997, the district court entered judgment on the arbitration award in favor of Logicon. This appeal followed.

We review the district court's ruling regarding the arbitrability of Mr.

---

[2] As to the merits of Mr. McWilliams' Americans with Disabilities Act claims, Logicon contends, prior to terminating his employment, it repeatedly counseled, warned and disciplined Mr. McWilliams for sleeping on the job and failing to report to work. According to Logicon, Mr. McWilliams never advised Logicon of any health or medical condition that affected his performance and never requested accommodation for any disability prior to his termination. To the contrary, when questioned about his performance problems, Mr. McWilliams repeatedly denied suffering from any debilitating condition.

McWilliams' claims de novo. *Armijo v. Prudential Ins. Co,* 72 F.3d 793, 796 (10th Cir. 1995). The issues presented are straightforward: (1) whether Mr. McWillliams' Americans with Disabilities Act claims are subject to binding arbitration in accordance with the Federal Arbitration Act; and (2) if Mr. McWilliams' claims are subject to arbitration, whether Logicon waived its right to compel arbitration by waiting until after Mr. McWilliams filed suit to invoke the arbitration agreement.

*Arbitrability*

Mr. McWilliams posits two reasons why his claims against Logicon are not arbitrable. He first asserts the Federal Arbitration Act does not apply to him because of its express exemption for "workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Curiously, however, he concludes this argument by suggesting the nature of his employment relationship was "something less than contractual," and therefore "the alleged arbitration clause [is] not worthy of enforcement." Second, Mr. McWilliams argues the arbitration clause at issue is limited in scope to claims or disputes "arising out of the termination" of his employment. By characterizing his claims as arising "mainly from Logicon's denial of reasonable accommodation during the course of his employment," not from his termination, Mr. McWilliams attempts to insulate his complaint from the

-4-

scope of the arbitration clause.

Mr. McWilliams cannot have his cake and eat it too -- he either had an *employment contract* potentially within the ambit of the Federal Arbitration Act's "workers engaged in interstate commerce" exemption,[3] or he did not. For purposes of considering his first argument, we therefore will assume, without deciding, the requisite employment contract existed between Mr. McWilliams and Logicon. The question then becomes whether we should construe the exemption broadly to include all contracts of employment affecting commerce, or limit its application to that class of workers, such as transportation workers, who actually are engaged in the movement of goods in foreign or interstate commerce.

Many courts have considered this precise issue, however, the Tenth Circuit has not.

Of the courts that have addressed the intended scope of the workers

---

[3] The exclusionary clause at issue provides: "nothing herein contained shall apply to *contracts of employment* of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 (emphasis added).

engaged in interstate commerce exemption, all but one[4] have concluded the exceptions specified in 9 U.S.C. § 1 extend only to those individuals employed directly in the channels of commerce itself.  *See, e.g., Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1470-71 (D.C. Cir. 1997); *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 227 (3d Cir.). *cert. denied*, 118 S. Ct. 299 (1997); *Rojas v. TK Communications, Inc.* 87 F.3d 745, 747-48 (5th Cir. 1996); *Asplundh Tree Expert Co.*, 71 F.3d at 596-601; *Miller Brewing Co. v. Brewery Workers Local Union No. 9, AFL-CIO*, 739 F.2d 1159, 1162 (7th Cir. 1984), *cert. denied*, 469 U.S. 1160 (1985); *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir. 1972); *Dickstein v. duPont*, 443 F.2d 783, 785 (1st Cir. 1971); *see also Paladino v. Avnet Computer Tech.,* Inc., 134 F.3d 1054, 1069-61 (11th Cir. 1998) (Cox, J. and Tjoflat, J. concurring).  We agree with the majority of our sister circuits that a narrow construction of 9 U.S.C. § 1 to include only employees actually engaged in the channels of foreign or interstate commerce comports with both the text and history of the Federal Arbitration Act.  A narrow construction of the § 1 exclusion also furthers the modern federal policy favoring

---

[4] *United Elec., Radio & Mach. Workers of Am. v. Miller Metal Prod., Inc.*, 215 F.2d 221, 224 (4th Cir. 1954) (rejecting a narrow construction of the exemption, but expressly limiting its holding to collective bargaining agreements).  Because the Fourth Circuit has not reaffirmed this holding in over forty years, some question whether it is still good law.  *See Asplundh Tree Expert v. Bates*, 71 F.3d 592, 600 (6th Cir. 1995).

arbitration. *See Armijo*, 72 F.3d at 797. We therefore follow the prevailing trend among courts to hold that the workers engaged in interstate commerce exclusion does not encompass all employment contracts, just those of employees actually engaged in the channels of interstate commerce.

The products and services Logicon provides to the United States military undoubtedly affect interstate commerce at some level. Logicon and its employees cannot, however, be said to directly affect the channels of commerce. Thus, applying the rule we have adopted here today, we hold Mr. McWilliams' claims are not insulated from the Federal Arbitration Act.

Mr. McWilliams' argument that his claims fall outside the scope of the arbitration clause fares no better. The allegations and relief requested in Mr. McWilliams' complaint can be fairly interpreted to arise from Logicon's termination of Mr. McWilliams' employment. Such interpretation obviously furthers the strong federal policy favoring arbitration. It also comports with cases from this circuit and the Supreme Court that apply the presumption in favor of arbitrability even where a party's claims are founded on statutory rights. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Armijo*, 72 F.3d at 797. As the district court noted, there is nothing in the Americans with

Disabilities Act that prohibits arbitration of claims asserted under that Act. In fact, the Act encourages arbitration of Americans with Disabilities disputes, where appropriate. *See* 42 U.S.C. § 12212. For these reasons, and because all doubts must be resolved in favor of arbitrability, *Armijo*, 72 F.3d at 797, we hold Mr. McWilliams' claims fall within the scope of the arbitration clause at issue.

*Waiver*

In light of our conclusion that Mr. McWilliams' claims are indeed subject to arbitration, we must proceed to address the issue whether Logicon waived its right to demand arbitration. The parties agree this court's decision in *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir. 1994), sets forth the factors relevant to a determination whether a party has waived its right to enforce an arbitration agreement. The six factors identified in *Metz* are:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [*e.g.*, taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

39 F.3d at 1489 (quoting *Peterson v. Shearson/American Express, Inc.*, 849 F.2d

464, 467-68 (10th Cir. 1988)). The parties disagree over whether Logicon's conduct satisfied the *Metz* test.

Mr. McWilliams argues Logicon waived its rights by failing to even mention its intent to enforce the arbitration agreement prior to his filing a lawsuit, despite being given ample notice of and opportunity to respond to his claims. According to Mr. McWilliams, he was "forced to file this lawsuit" when Logicon chose to remain silent regarding the arbitration agreement, and was "'affected, misled or prejudiced'" by such conduct. This argument is conclusory and fails to establish a waiver of rights under *Metz*.

It is beyond dispute Logicon filed its motion to dismiss or stay proceedings pending arbitration shortly after Mr. McWilliams filed his complaint in federal district court. Accordingly, the litigation machinery had not been substantially invoked, nor were the parties well into preparation of the lawsuit. Mr. McWilliams was not required to defend against a counterclaim, and Logicon had no opportunity to exploit discovery or other judicial procedures not available in arbitration. While it is possible Mr. McWilliams may have pursued a different strategy had he known of Logicon's position prior to filing his complaint, it is difficult to imagine how, as a plaintiff denying his claims are even arbitrable, he

was in any way misled or prejudiced by Logicon's course of action. Finally, Mr. McWilliams cites no authority requiring a party to invoke arbitration prior to the filing of a lawsuit. We cannot see how Logicon's conduct was in any way inconsistent with its right to arbitration pursuant to Mr. McWilliams' signed acceptance letters.

For all these reasons, we **AFFIRM** the district court's orders compelling arbitration and entering judgment on the arbitration award in favor of Logicon.